102 P.3d 828 (2004)
STATE of Washington, Respondent,
v.
Denise Lene MERKT, Appellant.
No. 22223-3-III.
Court of Appeals of Washington, Division 3, Panel Three.
December 9, 2004.
*830 Sharon M. Brown, Attorney at Law, Pasco, WA, for Appellant.
Terry J. Bloor, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
BROWN, J.
Denise Merkt was arrested after police, executing a search warrant, found methamphetamine and drug paraphernalia in her vehicle and in a residence she occupied in Benton County. She appeals the trial court's denial of her motion to suppress evidence obtained as the result of the allegedly illegal search warrant. We affirm.

FACTS
Richland Police Detective Eric Lundquist began watching a residence located at 1942 Luther in Richland, Washington, where Ms. Merkt allegedly lived. The detective was familiar with Ms. Merkt because in 1999 and 2000 her former neighbors complained about suspiciously heavy traffic coming and going at all times of the day and night from her residence. In September 2001, the detective received new information that Ms. Merkt was selling illegal drugs from the residence on Luther. The detective drove past the Luther residence on at least 20 to 25 different occasions between September 2001 and April 2002 to watch for signs of drug activity. Ms. Merkt's vehicle was nearly always present at different times during both daytime and evening hours. The detective contacted Amy Simpson at the Luther address on September 19, 2001. Ms. Simpson admitted Ms. Merkt was her roommate.
In January 2002, informant Doug Turner, a convicted felon, contacted Detective Lundquist offering to provide information regarding drug activity in Richland in exchange for help on a pending driving while under the influence (DUI) charge. The detective told Mr. Turner no deals could be made. Mr. Turner told the detective he was a methamphetamine user tired of the effect it was having on his life. Mr. Turner directed the detective to 1942 Luther. He told the detective "Denise" lived there and sold "dope" out of that location. Clerk's Papers at 57. He said he had received methamphetamine from Denise at that location and had been present when her supplier brought drugs needing to be sold to the residence. Mr. Turner did not know Denise's last name, but knew she drove a blue-colored minivan. Detective Lundquist already knew Ms. Merkt had a blue minivan registered in her name. Mr. Turner told the detective he had been at the Luther residence many times and there were always drugs there. Mr. Turner said he had not been to the Luther residence since December 2001.
The detective independently learned Ms. Merkt's van was driven to a Rite Aid store in Richland on January 26, 2002, where a man and woman each purchased the maximum *831 amount of pseudoephedrine products allowed by law. From his training and experience, the detective knew that the over-the-counter medicine was often used in the manufacture of methamphetamine and could be traded by the purchaser to a methamphetamine cook for a small amount of the finished product.
On March 25, 2002, Detective Lundquist met with informant Brett Wilder, an inmate at the Benton County jail. Mr. Wilder wanted to talk with the detective about drug activity in the Tri-Cities. Although Mr. Wilder asked for favorable treatment in exchange for the drug information, the detective told him no deals could, or would be made. Mr. Wilder then told the detective a woman named Denise Merkt, who lived on Luther, sold dope. Mr. Wilder said he had last purchased dope from Denise during the first week of March 2002. He also said he could purchase dope from her at any time.
On April 1, 2002, Detective Lundquist applied for, and received, a warrant allowing him to search the residence at 1942 Luther, as well as Ms. Merkt's vehicle and person. Based on evidence gathered as a result of the search, Ms. Merkt was charged with unlawful possession of a controlled substance; maintaining a dwelling for controlled substances; and criminal mistreatment in the second degree.
Ms. Merkt unsuccessfully moved to suppress evidence based on an allegedly defective search warrant. Ms. Merkt was found guilt by a jury solely of the possession and mistreatment charges. After a standard range sentencing, Ms. Merkt appealed.

ANALYSIS
The issue is whether the trial court erred in denying Ms. Merkt's motion to suppress.
A search warrant must be based upon probable cause. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995). A search warrant probable cause decision is reviewed for abuse of discretion. State v. Anderson, 105 Wash.App. 223, 228, 19 P.3d 1094 (2001). Great deference is given to the court's decision. Id."All doubts are resolved in favor of the warrant." Id. We consider solely the information provided the issuing magistrate. Id. at 229, 19 P.3d 1094.
A search warrant application must specify the underlying facts so the magistrate can make a detached and independent assessment of the evidence. State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999). Probable cause exists if the affidavit for a search warrant sets out facts and circumstances sufficient to establish a reasonable inference the defendant is probably involved in criminal activity and that evidence of the particular crime will be found in the place to be searched. Id, Mere speculation or an officer's personal belief will not suffice. Anderson, 105 Wash.App. at 229, 19 P.3d 1094. An affidavit of probable cause must show "a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched." Thein, 138 Wash.2d at 140, 977 P.2d 582.
When the probable cause affidavit is based on an informant's hearsay, it must show the informant is probably trustworthy and has personal knowledge regarding the facts asserted under Aguilar-Spinelli.[1] Under Aguilar-Spinelli, the informant's statements are tested by the familiar two-pronged test, (1) credibility/reliability, and (2) basis of knowledge. The credibility prong may be satisfied by an informant's track record, if any, or by showing the informant was acting against his penal interest. State v. Jackson, 102 Wash.2d 432, 437, 688 P.2d 136 (1984). The basis of knowledge prong may be satisfied if the informant has personally witnessed the facts asserted. Id. Here, the basis of knowledge prong is uncontested.
The existence of probable cause is tested in a commonsense fashion. State v. Jackson, 150 Wash.2d 251, 265, 76 P.3d 217 (2003). If an affidavit does not establish probable cause, a defense motion to suppress evidence seized as a result of an improper *832 warrant should be granted. Anderson, 105 Wash.App. at 229, 19 P.3d 1094.
The probable cause affidavit supports the magistrate's decision to issue the search warrant. The detective knew from his investigation and prior contacts with Ms. Merkt that she associated with Danny Hunter, a well known local methamphetamine cook. Detective Lundquist knew Ms. Merkt had two previous felony drug convictions. Detective Lundquist had spoken with Ms. Simpson, who admitted Ms. Merkt lived at 1942 Luther. Detective Lundquist monitored the absence or presence of Ms. Merkt's blue minivan at that residence. Details surrounding the informal surveillance were flushed out at trial, but were sufficiently revealed to the magistrate.
Both informants, Mr. Turner and Mr. Wilder, gave statements against their penal interests, thus establishing the reliability of their information as discussed in State v. Lair, 95 Wash.2d 706, 710-11, 630 P.2d 427 (1981) and Jackson, 102 Wash.2d at 437, 688 P.2d 136. They voluntarily agreed to speak with the detective in spite of the detective's refusal to make any deals and gave incriminating evidence against Ms. Merkt and themselves. That an informant is named is one fact the court considers in determining the sufficiency of an affidavit of probable cause. State v. Duncan, 81 Wash.App. 70, 78, 912 P.2d 1090 (1996). Significantly, while making statements against their penal interests, both witnesses volunteered critical evidence that linked Ms. Merkt to illegal drug activity occurring at the Luther address. These informants provided first-hand knowledge of purchases. Thus, both Aguilar-Spinelli prongs are satisfied.
Finally, Ms. Merkt infers the information provided in the affidavit was stale. The test for staleness is commonsense. State v. Hall, 53 Wash.App. 296, 300, 766 P.2d 512 (1989). To determine whether information is stale, we review a number of factors, which include (1) the amount of time that has elapsed; and (2) the nature and scope of the suspected activity. Id. Here, one witness had purchased illegal drugs about four months prior to the search warrant issuing and the other approximately one month prior.
Ms. Merkt had a past criminal drug history. The witnesses' voluntary statements to Detective Lundquist corroborated each other. Ms. Merkt's vehicle was used to purchase large amounts of a drug precursor approximately three months prior to the search. While a single piece of information, viewed in isolation, might have been considered stale, the totality of the information established probable cause that the drug sales were current and on-going. The trial court did not abuse its discretion in deciding the information taken together in a commonsense fashion was not stale. We defer to the trial court's decision and resolve doubts in favor of the warrant. Anderson, 105 Wash.App. at 229, 19 P.3d 1094.
Affirmed.
I CONCUR: SWEENEY, J.
SCHULTHEIS, J. (dissenting).
Police searched Denise Merkt's residence after obtaining a search warrant based on vague and stale information from questionable sources. Because the search warrant is deficient, I would not affirm the trial court's denial of the motion to suppress and must respectfully dissent.
"An application for a warrant must state the underlying facts and circumstances on which it is based in order to facilitate a detached and independent evaluation of the evidence by the issuing magistrate." State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999). The warrant should not issue on "loose, vague, or doubtful bases of fact." State v. Perrone, 119 Wash.2d 538, 545, 834 P.2d 611 (1992). To be sufficient, an affidavit in support of a search warrant must "recite specific data as to times, places and magnitude of previous criminal activity." State v. Higby, 26 Wash.App. 457, 463, 613 P.2d 1192 (1980) (emphasis added). The affidavit must establish the probability of current criminal activity occurring at or about the time the warrant was issued. Id. at 460, 613 P.2d 1192. Facts which tend to show that "criminal activity occurred at some prior time" are an insufficient basis for the issuance of a *833 search warrant. Id. The contemporaneousness of the criminal activity is assessed on a case-by-case basis, taking into consideration the nature and scope of the suspected criminal activity. Id. at 461, 613 P.2d 1192. To determine if the information is stale, we examine not only the number of days between the events that constitute the factual basis and the issuance of the warrant, we also consider "the probability that the items sought in connection with the suspected criminal activity will be on the premises at the time of the search." State v. Perez, 92 Wash.App. 1, 9, 963 P.2d 881 (1998).
A witness's reliability is greatly diminished when the information is offered in the hope of gaining leniency for other crimes. State v. Rodriguez, 53 Wash.App. 571, 576, 769 P.2d 309 (1989) (quoting 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.4(a), at 726-27 (2d ed.1987)). In that case, a named informant has the same questionable motivation as an unnamed witness whose veracity must be demonstrated on the face of the affidavit to avoid the spectre of an "anonymous troublemaker." Rodriguez, 53 Wash.App. at 575-76, 769 P.2d 309.
Here, the most recent information was provided by Brett Wilder, an incarcerated felon seeking leniency on an unknown charge by volunteering information. Mr. Wilder claimed to have purchased drugs from Ms. Merkt approximately one month prior, but he provided no details as to location of the purported transaction. Doug Turner, another felon seeking dismissal of a pending driving under the influence charge, provided information about drug activity in a residence four months before the warrant was sought. He knew the resident only as "Denise." Report of Proceedings at 226.
There was inadequate independent investigation and surveillance conducted by police. Police could have flushed out these outdated tips with a controlled buy. Further, although the officer did not promise special treatment to the witnesses in a quid pro quo agreement, they still hoped for consideration after the fact. Mr. Wilder's motivation is particularly suspect because the affidavit does not specify the type of trouble he was attempting to avoid by providing information. Both witnesses' veracity was reduced to that of an unnamed witness by their questionable motivation. That veracity was not rehabilitated within the affidavit. Therefore, the search warrant affidavit is inadequate as a matter of law. In re Det. of Petersen, 145 Wash.2d 789, 799-800, 42 P.3d 952 (2002) (after clarifying standard of review for probable cause determinations, holding that the ultimate determination of whether the facts set forth in the search warrant add up to probable cause is a legal conclusion subject to de novo review).
Because the search warrant affidavit is deficient, I would reverse.
NOTES
[1] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).